# EXHIBIT A

Choice Home Equity Line of Credit - Principal and Interest

**◉ PNC BANK**

Borrower: SHERRYCE VALENTINE
Lender: PNC Bank, National Association ("PNC Bank, N.A.")
Date of this Agreement: March 14, 2023

## AGREEMENT AND DISCLOSURE STATEMENT

Payment Due Date: 28
Account Number: ████████
Maximum Credit Limit: $50,000.00
Name of Borrower(s):
SHERRYCE VALENTINE

Address:
7834 FORREST AVE
PHILADELPHIA, PA 19150

☒ REGULAR ACCOUNT

Automatic Payment Plan Discount: 0.250 percentage points off Base Margin
Checking Account Number: ████████
In Name(s) of: SHERRYCE VALENTINE

The Initial Daily Periodic Rates and Initial Annual Percentage Rates disclosed in this Agreement are based on the Indexes in effect as of March 9, 2023. If any of the Indexes have recently changed, your actual Initial Daily Periodic Rates and Annual Percentage Rates may be different. Your first billing statement will contain your actual Annual Percentage Rate and Daily Periodic Rate.

### VARIABLE RATE PART

Initial Daily Periodic Rate: 0.0245% per day
Initial Corresponding **ANNUAL PERCENTAGE RATE: 8.960%** per year
Base Margin: 1.460 percentage points

The Corresponding **ANNUAL PERCENTAGE RATE** will never be less than 2.25%, regardless of the value of the Index in effect at any time, and even if a Discount applies to the Base Margin. See the section below entitled "How we Determine the Rate on the Variable Rate Part" for the rules relating to interest rate changes and limits.

### FIXED RATE PARTS

The Initial Daily Periodic Rate, Initial Corresponding ANNUAL PERCENTAGE RATE, and the applicable Margin for Fixed Rate Part transfers will depend upon the amount and term of the particular loan that you request. These Rates and Margins are shown in Table 1 at the end of this Agreement.

**During the Draw Period, we frequently feature promotions that offer you a lower Daily Periodic Rate and Annual Percentage Rate for Fixed Rate Part transfers. Please contact Customer Service at 1-888-762-2265 to determine whether such a promotional rate is available to you that is lower than the then current contract rate.**

1. **OTHER FINANCE CHARGES**

   (a) Transfer Fee: $100.00 per transfer

   You must pay a Transfer Fee each time you make a transfer to a Fixed Rate Part, except this fee is waived if you establish a Fixed Rate Part at credit line origination.

   (b) FINANCE CHARGES required to open this Account: To open this Account, you must pay the following **FINANCE CHARGES** on or before the date this Account becomes effective (You may not use a loan from this Account to pay these Finance Charges): $0.00

2. **CLOSING COSTS: $0.00**

3. **ANNUAL FEE** ☒ Annual Fee: $50.00

The Annual Fee will be charged to your Account by the second Billing Cycle following account opening and each year thereafter, during the Draw Period.

**Agreement Index.** For your reference, an index to this Agreement is provided on page 11.

**1. Definitions.** In this Agreement, the following definitions apply: "Agreement" means this Choice Home Equity Line of Credit Agreement and Disclosure Statement, the Mortgage and any amendment or addendum to this Agreement.

Choice Home Equity Line of Credit - Principal and Interest

**⦿ PNCBANK**

Borrower: SHERRYCE VALENTINE
Lender: PNC Bank, National Association ("PNC Bank, N.A.")
Date of this Agreement: March 14, 2023

### AGREEMENT AND DISCLOSURE STATEMENT

**Parties to this Agreement.**

"We," "us," "our" or "Lender" means the Lender named above or any person or entity to whom the rights of the Lender have been assigned.

"You," "your," "yours" or "Borrower" means each and every person signing this Agreement as a Borrower, whether one or more persons sign.

**Parts of the Account.**

"Account" means the Choice Home Equity Line of Credit Account evidenced by this Agreement.

"Variable Rate Part" means the part of this Account from which loans will be made. The interest rate on the Variable Rate Part may change. Changes in the interest rate will affect existing balances and new loans.

"Fixed Rate Part" means the part of this Account to which you may transfer all or a portion of the principal balance in the Variable Rate Part. Changes in the interest rate will affect transfers to a new Fixed Rate Part, but will not affect the interest rate on a Fixed Rate Part once it is established.

**Types of Accounts.**

"Regular Account" means an Account which is not eligible for an Employee Benefit.

**Other Terms Used in This Agreement.**

"Automatic Payment Plan" means that you have authorized us to deduct the Minimum Payment each month from an eligible checking account, on or about the Payment Due Date.

"Billing Cycle" means the interval between the dates on which monthly statements are prepared or would have been prepared if one were required under the paragraph called "Monthly Statements."

"Choice Access Card" and "Card" mean the credit card or cards issued by Lender to each Borrower in connection with this Account.

"Close this Account" means that (1) this Account has been Terminated either by you or by us (or is in the Repayment Period); (2) this Account has a zero outstanding balance; and (3) we are obligated, upon payment of the accrued interest for any partial Billing Cycle to Satisfy the Mortgage of Record.

"Draw Period" means the first phase of the Account during which you can obtain loans from the Variable Rate Part and make transfers to Fixed Rate Parts. The Draw Period begins after we approve the credit, you have signed this Agreement and no one has rescinded this Agreement within the time provided under the Notice of Right to Cancel.

"Maximum Credit Limit" or "Maximum Credit" means the dollar amount of credit available to you. The total of the principal balances of all parts of the Account plus Choice Access Card transactions which have been authorized but not yet posted to the Account may not exceed the Maximum Credit Limit.

"Mortgage" means the mortgage, deed of trust or security deed given by the Borrower and/or the other owner of the Mortgaged Premises to secure this Account.

"Mortgaged Premises" means the property covered by the Mortgage given to secure this Account, as is more particularly described in the Mortgage.

"Repayment Period" means the phase of the Account after the Draw Period has ended, during which any remaining balance must be paid. You may not obtain new loans or make transfers during the Repayment Period. The Repayment Period will begin with the first Billing Cycle following the end of the Draw Period and will continue until you have paid the balance in full.

"Satisfy the Mortgage of Record" means that, in accordance with applicable law or custom, the Lender records in the appropriate state or local government office evidence that the debt has been paid and that the Mortgage is no longer an encumbrance on the Mortgaged Premises, or the Lender provides evidence that the debt has been paid and that the Mortgage is no longer an encumbrance on the Mortgaged Premises to Borrower or to some other person authorized to receive it.

"Suspension" means that you will no longer be able to obtain loans, obtain any extensions of credit or make transfers to Fixed Rate Parts. Suspension affects the Account temporarily, until the condition which caused the suspension no longer exists.

"Termination" means that you will no longer be able to obtain loans, obtain any extensions of credit or make transfers to Fixed Rate Parts. Termination affects the Account permanently.

**2. General Description of the Account.** This Account is a revolving loan Account, sometimes called a line of credit. It is secured by the Mortgage. You may obtain loans on this Account from time to time during the Draw Period by writing checks, by using the Choice Access Card, if applicable, or by using other methods which we may permit. We will add the loans to the balance of the Variable Rate Part; you will repay the loans by making monthly payments. As you repay the balance, we will again make the credit available to you, during the Draw Period. At the end of the Draw Period, you must repay any outstanding balance in the Variable Rate Part during the Repayment Period. We will charge a Finance Charge on the outstanding principal balance on the Variable Rate Part at rates that may change from time to time. Each new rate will apply to the outstanding balance in your Variable Rate Part and all new borrowings until the rate changes again.

During the Draw Period, you may transfer all or a portion of the principal balance from the Variable Rate Part to a Fixed Rate Part. We will charge a Finance Charge, called a Transfer Fee, each time you make a transfer. We will charge you a Finance Charge on the outstanding principal balance on a Fixed Rate Part. Changes in the interest rate will affect transfers to a new Fixed Rate Part, but will not affect the interest rate on a Fixed Rate Part once it is established. You may not transfer additional balances to an existing Fixed Rate Part. There is no limit on the number of Fixed Rate Parts you may establish during the Draw Period; however, you may have no more than five Fixed Rate Parts open at any time in any Billing Cycle plus one Fixed Rate Part if you established it when you opened the Account.

You may not make a new loan that would cause the total of the principal balances of the Variable Rate Part and all Fixed Rate Parts plus Choice Access Card transactions that have been authorized but not posted to the Account to exceed the Maximum Credit Limit. You may not make a new loan or make a transfer to a Fixed Rate Part during any period of Suspension or after Termination.

If more than one name is listed in the "Name of Borrower(s)" paragraph above, each individual named has authority to write checks, use the Card, or obtain funds from this Account by any other means as we may, from time to time, permit without the signature or

Choice Home Equity Line of Credit - Principal and Interest

**⬤PNC BANK**

Borrower: SHERRYCE VALENTINE
Lender: PNC Bank, National Association ("PNC Bank, N.A.")
Date of this Agreement: March 14, 2023

### AGREEMENT AND DISCLOSURE STATEMENT

endorsement of any other Borrower. Each Borrower has the right to establish a Fixed Rate Part without the signature of any other Borrower.

**3. Draw and Repayment Periods; Term of a Fixed Rate Part.** Your Account will consist of two periods, a Draw Period and a Repayment Period. You are permitted to make new loans and establish new Fixed Rate Parts, from time to time, only during the Draw Period. The Draw Period will end on the last day of the Billing Cycle in which the tenth anniversary of the opening of the Account occurs.

The length of the repayment Period on the Variable Rate Part will be 30 years. Depending on (a) the principal balance in the Variable Rate Part (i) at the end of the first Billing Cycle in the Repayment Period, or (ii) at the end of a Billing Cycle in the Repayment Period in which a Choice Access Card transaction is posted, and (b) the Annual Percentage Rate(s) which apply, your Minimum Payments may repay the Variable Rate Part in less than 30 years. The term of a Fixed Rate Part will be not less than five years and not more than thirty years, as selected by you.

**4. Loans.** Subject to the conditions stated in the paragraph called "Our agreement to make loans," below, during the Draw Period, you can obtain loans on this Account in any of the following ways, and in any other way that we may later permit:

(a) **Checks.** You may write checks on this Account in an amount up to your maximum credit limit. You must use one of the special checks that we will give you for this purpose. Checks must be dated, drawn and given to the payee during the Draw Period and received by us during the Draw Period or within five business days after the end of the Draw Period.

(b) **Our agreement to make loans.** We agree to make loans to you on this Account by paying checks you write on this Account, or through such other methods as we may permit including by paying merchants on your behalf for Card Transactions and by processing ATM transactions. However, we are not obligated to make a loan to you on this Account if the loan would cause the total of the principal balances on all parts of this Account plus Choice Access Card transactions which have been authorized, but not posted to the Account, to exceed the Maximum Credit Limit. We are not obligated to make a loan to you on this Account for any check or other method of obtaining credit such as a Card transaction made by you or received by us after this Account is Terminated or during any period when further extensions of credit are prohibited or Suspended, as provided for in this Agreement. If we make a loan to you on a transaction you initiate, but we are not obligated to make, it is nevertheless a loan on this Account.

(c) **Transfers to Fixed Rate Parts.** Subject to the limitations on Transfers stated in the paragraph called "Establishing a New Fixed Rate Part," we agree to transfer balances from the Variable Rate Part to a Fixed Rate Part during the Draw Period, if requested by you in the manner required by this Agreement.

(d) **Transfers from Fixed Rate Parts.** You may also transfer balances from a Fixed Rate Part to the Variable Rate Part during the Draw Period, if requested in the manner required by us. If you request such a transfer, you must transfer the entire amount of the principal balance remaining in the Fixed Rate Part at the time of the request. Transfers of partial balances are not permitted. Any balances transferred to the Variable Rate Part will become subject to all terms of this Agreement relating to the Variable Rate Part, including provisions relating to the determination of interest and how it may vary, and how payments are determined. Also, any discount that may have applied to the Fixed Rate Part Margin will no longer apply to the balance that is transferred to the Variable Rate Part.

(e) **Right to Make Loans and Transfers.** Only Borrowers who sign this Agreement have the right to make loans and Transfers on this Account; an owner of the Mortgaged Premises who is not a Borrower does not have the right to make loans or Transfers.

(f) **Choice Access Cards.** If Borrower requests a CHOICE Access Card at the time of account opening or subsequently requests a card, the following is applicable.

(i) Each Borrower agrees to sign the Card on the back, at the place for Borrower's signature, and to follow the instructions provided with the Card to activate the Card. If you do not sign and activate the Card, you may not be able to use it. You may not be able to use the Card after the expiration date stated on the Card.

(ii) You may use the Card to obtain goods or services from merchants who accept the Card. You may use the Card to obtain cash advances from the Lender and from other persons who accept the Card for this purpose. You may use the Card to pay bills to other persons who accept the Card for this purpose. You may use the Card at any ATM or other electronic or automated cash dispensing device.

(iii) When you initiate a Card transaction, the merchant may request us to authorize the transaction using the Card authorization network. If we receive a request to authorize the transaction, we will tell the merchant whether or not we will make a loan on the Account and pay the merchant the amount of the transaction, subject to certain conditions. You agree that we can respond to any merchant who requests an authorization.

(iv) We will not pay any Card transaction after you have reported the Card lost or stolen; we may not pay any Card transaction that is not made by a Borrower or which we reasonably suspect is not made by a Borrower.

(v) If you make a Card transaction in a currency other than U.S. dollars, the company that processes the transaction will convert the amount of the transaction to U.S. dollars and we will charge your Account for the converted amount. The currency exchange will be done by a method and at a rate determined by the company that processes the transaction.

(vi) If you withdraw cash from an ATM operated by us, we will not charge you a fee for the ATM transaction, other than the fees disclosed in this Agreement. If you withdraw cash from an ATM which is operated by someone other than us, you may be charged a fee by the operator of the ATM.

(vii) The following limitations apply to Card transactions:

(A) You may not use the Card as a debit card, using a personal identification number (PIN), to obtain goods or services from a merchant or for any other transaction with a merchant that requires a PIN.

(B) You may not withdraw more than $500.00 per day using one or more ATMs.

(C) You may not withdraw cash more than 5 times per day from one or more ATMs.

(D) Card transactions may be made only during the Draw Period and before the expiration date stated on the Card, and authorized by us using the Card authorization network during the Draw Period.

We are not obligated to make a loan to you to pay a transaction in violation of one of these limitations.

Principal and Interest CHELOC Agreement

Choice Home Equity Line of Credit - Principal and Interest

**⊘ PNC BANK**

Borrower: SHERRYCE VALENTINE
Lender: PNC Bank, National Association ("PNC Bank, N.A.")
Date of this Agreement: March 14, 2023

## AGREEMENT AND DISCLOSURE STATEMENT

**5. Establishing a New Fixed Rate Part.** During the Draw Period, you may transfer all or a portion of the principal balance in the Variable Rate Part to a new Fixed Rate Part.

(a) **Request for a Transfer.** You may request a transfer to a Fixed Rate Part by completing and signing a Balance Transfer Request form, provided by us. Any one Borrower may sign the form. Upon receiving the properly completed form, we will comply with your request or respond to you within a reasonable time, which may not be that same banking day.

(b) **Transfer Fee.** You agree to pay a Transfer Fee, in the amount disclosed on page one, each time you make a transfer to a Fixed Rate Part. The Transfer Fee is a *FINANCE CHARGE*.

(c) **Term of a Fixed Rate Part.**

(i) When you request a transfer to a Fixed Rate Part, you must specify on the Balance Transfer Request form the length of the repayment term of the Fixed Rate Part. The term must be stated in full months; transfers involving partial months are not permitted. The term may not be less than 60 months and not more than 360 months.

(ii) The first payment on the Fixed Rate Part will be due approximately 25 days after the last day of the Billing Cycle in which the transfer is made.

(d) **Payment Amount.**

(i) The scheduled payments for a Fixed Rate Part will be calculated so that equal payments of principal and interest will pay the Fixed Rate Part in full by the end of the term of the Fixed Rate Part, if all payments are made on or before the Payment Due Dates.

(e) **Limitations on Transfers.**

(i) Transfers to a Fixed Rate Part must be in amounts not less than $5,000.00 each.

(ii) You may not transfer balances from a Fixed Rate Part to another Fixed Rate Part.

(iii) You may not transfer any additional balance to a Fixed Rate Part after it has been established by the initial transfer.

(iv) Transfers may be made only during the Draw Period, and only during periods when the Account has not been Terminated or Suspended.

(v) You may not make a transfer to a Fixed Rate Part during any Billing Cycle in which there was a balance on more than five Fixed Rate Parts during that Billing Cycle, except that if you made a transfer to a Fixed Rate Part at the time you opened this Account, then you may not make a transfer to a Fixed Rate Part during any Billing Cycle in which there was a balance on more than six Fixed Rate Parts during that Billing Cycle so long as there remains a balance outstanding on the Fixed Rate Part established at Account Opening.

**6. Security Interest.**

(a) You and any other owners of the Mortgaged Premises have executed a Mortgage to secure the payment of all money due under this Agreement, including future advances. The rights and duties of you and any other owners and of us are set forth in this Agreement and in the Mortgage. We waive our security in the Mortgaged Premises as to any extension of credit to the extent that it would cause the outstanding principal balance to exceed the Maximum Credit Limit.

(b) You also give us a security interest in the proceeds and returned premiums of any property and, if applicable, flood insurance covering the Mortgaged Premises.

(c) Collateral securing other obligations to us may also secure this Account.

**7. Finance Charge due to the application of the Periodic Rate ("interest").** At all times that this Account is in effect, including the Draw Period and the Repayment Period and any period after Termination in which there remains an outstanding balance on this Account, interest will be calculated as of the last day in the Billing Cycle in the following way:

(a) **When the Interest Begins.** Interest begins to accrue on the day each loan and each transfer is posted to this Account. There is no time during which credit is extended that you do not incur interest.

(b) **How We Determine the Balance on Which Interest is Computed.** For each part of the Account, we compute interest on the "Daily Balance" (including current transactions) on that part during the Billing Cycle. To get the Daily Balance for each part, we take the beginning balance on that part each day and add any new loans or transfers posted to that part that day; we subtract any payments and credits posted to that part that day; and we then subtract any Late Charges, fees, and unpaid Finance Charges included in the balance for that part. This gives us the "Daily Balance" for the part. We do this to get the Daily Balance for each part, separately.

(c) **How We Compute Interest.** For each part, we will compute interest for the Billing Cycle by adding together the Daily Balance for each day during the Billing Cycle and then multiplying that sum by the Daily Periodic Rate in effect during that Billing Cycle for that part. The result is the interest for that part for that Billing Cycle. We add the interest from each part for that Billing Cycle to get the interest for the Account for that Billing Cycle.

(d) **Daily Periodic Rate and Annual Percentage Rate.** The interest for each part will be computed using the initial Daily Periodic Rate for that part determined as provided for in this Agreement. The Initial Daily Periodic Rate corresponds to the initial *ANNUAL PERCENTAGE RATE* for that part as of March 9, 2023 disclosed on page one. These rates are subject to change each Billing Cycle as described below.

(e) **The Corresponding Annual Percentage Rate** includes only interest and no other charges.

(f) **How We Determine the Rate on the Variable Rate Part.** The Daily Periodic Rate and Corresponding Annual Percentage Rate applicable to the Variable Rate Part may increase or decrease as of the first day of each Billing Cycle. These changes may be the result of a change in the "Index" or a change in your eligibility for an Automatic Payment Plan Discount. Changes in the Corresponding Annual Percentage Rate and in the Daily Periodic Rate may increase the amount of interest you must pay and can change the amount of and number of payments necessary to pay the Variable Rate Part in full.

(i) **Variable Rate Part Index.** The Variable Rate Part Index will be the Latest Prime Rate for the U.S., published in *The Wall Street Journal* ("Latest U.S. Prime Rate") on the last day on which the Latest U.S. Prime Rate is published in the calendar month preceding the first day of the Billing Cycle. If more than one Latest Prime Rate is reported on that day, the

**Choice Home Equity Line of Credit - Principal and Interest**

**◑ PNC BANK**

Borrower: SHERRYCE VALENTINE
Lender: PNC Bank, National Association ("PNC Bank, N.A.")
Date of this Agreement: March 14, 2023

### AGREEMENT AND DISCLOSURE STATEMENT

highest rate will be used. The Variable Rate Part Index is not necessarily the lowest rate charged by us on our loans.

**(ii) Variable Rate Part Margin.** During Billing Cycles in which no Discounts apply, the Variable Rate Part Margin will be equal to the Variable Rate Part Base Margin stated on page one. If you are eligible for the Automatic Payment Plan Discount during the Billing Cycle, the Variable Rate Part Base Margin(s) will be reduced by the amount of the corresponding Discount shown at the top of page one.

**(iii) Calculation of the Variable Rate Part Corresponding Annual Percentage Rate.** The Variable Rate Part Corresponding Annual Percentage Rate for any Billing Cycle will be the sum of the Variable Rate Part Index plus the Variable Rate Part Margin. *Provided, however,* that the Variable Rate Part Corresponding *ANNUAL PERCENTAGE RATE* will never be more than 24% and will never be less than 2.250% (the "floor"). *This interest rate floor will apply regardless of the Index value or any Discounts applicable to the Margin.*

**(iv) Calculation of the Variable Rate Part Daily Periodic Rate.** The Variable Rate Part Daily Periodic Rate to be used in each Billing Cycle will be determined on the first day of the Billing Cycle by dividing the applicable Variable Rate Part Corresponding Annual Percentage Rate by 365 (or 366 in a leap year).

**(g) How We Determine the Rate on the Fixed Rate Part.** The Fixed Rate Part Daily Periodic Rate and Fixed Rate Part Corresponding Annual Percentage Rate applicable to a new Fixed Rate Part may increase or decrease as of the first day of the Billing Cycle in which the Fixed Rate Part is established. The Daily Periodic Rate and Corresponding Annual Percentage Rate applicable to a Fixed Rate Part will not thereafter change during the term of the Fixed Rate Part.

**(i) Fixed Rate Part Index.** The Fixed Rate Part Index is the Bankrate.com US Home Mortgage 15 Year Fixed National Average APR published on Bloomberg.com under the Quotes section (Ticker ILM1NAVG:IND) on the last day on which that rate is published in the calendar month preceding the calendar month in which the Fixed Rate Part is established. The Fixed Rate Part Index is not necessarily the lowest rate charged by us on our loans. NOTE: We add the Fixed Rate Part Margin to this Fixed Rate Part Index, as described below, to calculate the Fixed Rate Part Corresponding Annual Percentage Rate.

**(ii) Fixed Rate Part.**

**(A) Fixed Rate Part Margin.** During Billing Cycles in which no Discounts apply, the Fixed Rate Part Margins will be equal to the Fixed Rate Part Base Margins for the Fixed Rate Part amounts and terms stated in Table 1 at the end of this Agreement. If you are eligible for the Automatic Payment Plan Discount during the Billing Cycle, the Fixed Rate Part Margin(s) will be reduced by the amount of the corresponding Discount shown at the top of page one.

**(B) Calculation of the Fixed Rate Part Corresponding Annual Percentage Rate.** The Fixed Rate Part Corresponding Annual Percentage Rate for any Billing Cycle will be the sum of the Fixed Rate Part Index plus the Fixed Rate Part Margin for the applicable Fixed Rate Part amounts and terms set forth in Table 1 at the end of this Agreement. *Provided, however,* that the Fixed Rate Part Corresponding *ANNUAL PERCENTAGE RATE* will never be more than 24% and will never be less than 2.250% (the "floor"). *This interest rate floor will apply regardless of the Index value or any Discounts applicable to the Margin.*

**(C) Calculation of the Fixed Rate Part Daily Periodic Rate.** The Fixed Rate Part Daily Periodic Rate to be used in each Billing Cycle will be determined on the first day of the Billing Cycle by dividing the applicable Fixed Rate Part Corresponding Annual Percentage Rate by 365 (or 366 in a leap year).

**(h)** If you Close this Account before the end of the Repayment Period, we may calculate the accrued interest up to the date that you Close this Account; we may require you to pay the accrued interest for the partial Billing Cycle along with the other amounts due before we Satisfy the Mortgage of Record.

**(i)** Automatic Payment Plan Discount. There is a discount for enrolling in the Automatic Payment Plan at the time of account opening. The Automatic Payment Plan Discount will not apply if your participation in the Automatic Payment Plan discontinues for any reason, including: (a) if you choose to terminate participation; (b) the checking account identified at the top of page one is closed; or (c) if there are not sufficient funds in the account to make the full monthly payment on any three payment due dates. If you cease to qualify for the Automatic Payment Plan Discount, the Annual Percentage Rate applicable to this Account may increase by the amount of the discount shown at the top of page one, and other terms applicable to this Account may also change, as set forth in this Agreement.

**8. Other** *FINANCE CHARGES.* We will charge you the Other *FINANCE CHARGES* listed on page one.

**(a) Transfer Fee.** We will charge you a Transfer Fee of the amount disclosed on page one each time you transfer a balance to a Fixed Rate Part or each time you transfer a balance from a Fixed Rate Part back to the Variable Rate Part. The Transfer Fee is a FINANCE CHARGE applicable to the Variable Rate Part.

**(b)** *FINANCE CHARGES* required to open the Account. If Finance Charges required to open the Account are listed on page one, they must be paid before this Account is opened and may not be paid using loans from this Account.

**9. Other Charges.** Other Charges will be assessed to the Variable Rate Part.

**(a) Closing Costs.** If applicable, we will charge you closing costs of the type and in the amount set forth in the "Closing Costs" paragraph on page one.

**(b) Late Charges.** We will charge you a Late Charge equal to the greater of $40.00 or ten percent (10%) of the payment for each month any Minimum Payment is not made within 15 days of its due date. No Late Charge will be due if the reason the payment is late is either:

(i) attributable to a Late Charge assessed on an earlier payment; or
(ii) because, after default by you, the entire balance on this Account is due.

**(c) Annual Fee.** We will charge you an Annual Fee in an amount and beginning at the time set forth on page one and continuing each year thereafter during the Draw Period on this Account.

**(d) Return Credit Line Check and Overlimit Fee.** We will charge you a fee of $30.00 for each check written on this Account which is properly dishonored by us for any reason. We will charge you an Overlimit Fee of $30.00 for each check written

Choice Home Equity Line of Credit - Principal and Interest

**◯ PNC BANK**

Borrower: SHERRYCE VALENTINE
Lender: PNC Bank, National Association ("PNC Bank, N.A.")
Date of this Agreement: March 14, 2023

### AGREEMENT AND DISCLOSURE STATEMENT

on this Account which is paid by us which causes your outstanding principal balance to exceed your Maximum Credit Limit and for any Choice Access Card transaction or other event which causes your outstanding principal balance to exceed your Maximum Credit Limit. We will not charge an Overlimit Fee if the balance would not have exceeded your Maximum Credit Limit but for a Card transaction which had been authorized but not yet posted to the Account.

   (e) **Stop Payment Fee.** We will charge you a Stop Payment Fee of **$20.00** if you request us to stop payment on a check written on this Account. We cannot stop payment on a Choice Access Card transaction after it has been made by you.

   (f) **Return Check Fee.** We will charge you a fee of **$30.00** if your payment on this Account is made with a check, draft, negotiable order of withdrawal, other similar instrument, or an electronic debit entry (for example, auto pay) is returned to us unpaid for any reason.

**10. Payment Due Date.** The Minimum Payment will be due each Billing Cycle on or before the Payment Due Date stated each month on the Billing Statement. Initially, this will be on or about the day of the month stated on page one, but is subject to change at the option of the Lender. If you have the payment automatically charged to your Checking Account, this will occur on or about the Payment Due Date each month.

**11. Minimum Payment Amount.** The Minimum Payment will be calculated on the last day of each Billing Cycle and will never be greater than the total of the new balances on each part of the Account. The Minimum Payment will be the total of the following amounts:

   (a) Any past due amounts.

   (b) The current payment due on the Variable Rate Part, which will never be greater than the new balance on the Variable Rate Part and will be:

      (i) During the Draw Period. The current payment due will be the greater of: (i) the sum of the Finance Charge on the Variable Rate Part and other fees, if applicable (but not including Late Charges), which have accrued during the Billing Cycle, plus 1/360 of the principal balance on the Variable Rate Part at the end of the Billing Cycle; or (ii) $25.00.

      (ii) During the Repayment Period. Until the Variable Rate Part is paid in full, the current payment due will be the greater of:

         (A) the sum of the Finance Charge for the Variable Rate Part and other fees, if applicable (but not including Late Charges), which have accrued during the Billing Cycle, plus the greatest of (i) 1/360 of the principal balance in the Variable Rate Part at the end of the first Billing Cycle in the Repayment Period; or (ii) if one or more Card transactions are posted to the Account during the Repayment Period, 1/yth of the principal balance in the Variable Rate Part at the end of the last Billing Cycle in which a Card transaction was posted, where y equals the number of months remaining in the Repayment Period at the end of the last Billing Cycle in which a Card transaction was posted; or

         (B) $25.00.

   (c) The total of the current payments due on any Fixed Rate Parts will be the lesser of the new balance on the Fixed Rate Part or the scheduled payment on the Fixed Rate Part. Except that, on the due date of the final scheduled payment of a Fixed Rate Part, the total outstanding new balance of that Fixed Rate Part will be due, including all unpaid principal and Finance Charges. See the section called "Establishing a New Fixed Rate Part" to find out how the amounts of those payments will be calculated.

**12. Payments.**

   (a) **Payment Application.** We will use each payment made by you of an amount equal to or less than the Minimum Payment in any month first to pay the billed interest on all parts, in any order we choose; then to pay Late Charges, if any; then to pay any other fees and charges, in any order we choose; then to pay amounts incurred to protect the security of the Mortgage; then to pay billed principal, starting with the Fixed Rate Parts, in the order in which they were established, and then the Variable Rate Part; any remaining unapplied payment will be treated as a prepayment. If any principal in a part is not secured by the Mortgage, that amount shall be deemed paid before any other principal in that part that is secured by the Mortgage.

   (b) **Crediting of Payments.** A nonconforming payment, if accepted by us, will be credited to your Account not more than 5 days after the date we receive it, unless otherwise required by law. A nonconforming payment is a payment that is not made in accordance with the reasonable requirements stated on your monthly statement in the section called "Crediting of Payments."

   (c) **Credit Available for New Loans.** In calculating the principal balance for the purpose of determining the amount of the Maximum Credit Limit that is available for new loans, we may delay crediting payments for a reasonable time for checks and other payment methods to be collected from the drawee (to clear).

**13. Prepayment.**

   (a) If you pay an amount greater than the Minimum Payment which has been billed (the amount in excess of the Minimum Payment is called a "prepayment"), this will not affect the way we calculate the Minimum Payment in the next Billing Cycle. YOU MAY MAKE PREPAYMENTS IN ANY AMOUNTS AND MAY PAY THE ENTIRE BALANCE AT ANY TIME PROVIDED THAT YOU PAY AT LEAST THE MINIMUM PAYMENT EACH MONTH WHEN IT IS DUE. If you prepay in part, unless you and we agree in writing to apply the prepayment in a different order, we will apply any prepayment to repay the principal balance, starting with the Variable Rate Part, and then starting with the Fixed Rate Part with the highest interest rate; however, if the prepayment pays the principal balance in a Fixed Rate Part in full, we may apply any remaining prepayment to pay the unbilled interest in that Fixed Rate Part, before applying any of the prepayment to pay any other part. For the purposes of determining your rights under the Special Rule for Choice Access Card Purchases mentioned in the Notice of Your Billing Rights, we will apply your payments as required by law, which may be different than the method described above.

   (b) **Reimbursement of Closing Costs Including, if Applicable, Taxes.** The amendment to this Agreement in which you have agreed to reimburse us for certain closing costs including, if applicable, taxes, signed by you in connection with this Agreement, is incorporated herein by reference.

**14. Minimum Payment After Termination.** If this Account is Terminated during the Draw Period in accordance with the "Termination of Account Upon Default" paragraph, for the purposes of calculating the Minimum Payment, the Billing Cycle in which

Choice Home Equity Line of Credit - Principal and Interest

**◑ PNC BANK**

Borrower: SHERRYCE VALENTINE
Lender: PNC Bank, National Association ("PNC Bank, N.A.")
Date of this Agreement: March 14, 2023

**AGREEMENT AND DISCLOSURE STATEMENT**

the Termination occurs shall be considered to be a Billing Cycle during the Draw Period and all subsequent cycles shall be considered to be cycles during the Repayment Period. If this Account is Terminated during the Repayment Period, the Billing Cycle in which the Termination occurs and all subsequent cycles shall be considered to be Billing Cycles during the Repayment Period. After Termination, the Minimum Payments shall be calculated in accordance with this paragraph and the paragraph called "Minimum Payment Amount," unless we exercise our rights under the "Acceleration of the Outstanding Balance."

**15. Required Insurance.** We require you to obtain and keep in force property insurance on the Mortgaged Premises and to provide evidence of insurance to us. To the extent permitted by applicable law, insurance must cover loss of or damage to the Mortgaged Premises and must be in such an amount as is sufficient to protect our interest. If flood insurance is required by federal law, you agree to obtain and keep in force insurance in the amount required by law. YOU MAY OBTAIN THESE INSURANCE COVERAGES FROM ANY PERSON OF YOUR CHOICE. Your choice is subject to our reasonable approval. All policies must name us as a loss payee/mortgagee in a form acceptable to us and provide for at least 10 days' notice to us of reduction in coverage or cancellation.

**16. We May Purchase Insurance If You Don't.** If you fail to keep in force property insurance and/or, if applicable, flood insurance and/or fail to provide evidence of such insurance to us, we may notify you that you should purchase the required insurance at your expense. If you fail to purchase the insurance within the time stated in the notice and/or fail to provide us with evidence of such insurance, we may purchase insurance to protect our interest, to the extent permitted by applicable law and charge you the cost of the premiums and any other amounts we incur in purchasing the insurance. THE INSURANCE WE PURCHASE WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE YOU LESS COVERAGE THAN INSURANCE YOU COULD PURCHASE YOURSELF. At our option, we may treat these premiums and fees as an extension of credit from this Account on which interest will accrue or as amounts incurred to protect the security of the Mortgage. To the extent permitted by applicable law, Lender may receive reasonable compensation for obtaining the required insurance on Borrower's behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Lender. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If additional information is required concerning insurance or our affiliate arrangements, please contact us at:

PNC Bank, National Association
ISAOA ATIMA
P.O. Box 7433
Springfield, OH 45501

**17. You Agree:**

(a) Not to request transfers for less than $5,000.00.

(b) To repay all amounts advanced hereunder together with interest, as provided in this Agreement. You also agree to pay any other amounts which become due hereunder. These include, as applicable, other Finance Charges which you will pay when you open this Account, Transfer Fees, any amounts you may owe because of an unauthorized use of your Choice Access Card, Other Charges, any amounts advanced to protect the security of the Mortgage or for insurance, and Costs of Collection.

(c) To pay at least the Minimum Payment each month on or before the Payment Due Date.

(d) To immediately pay any Late Charge assessed.

(e) Not to make loans from this Account which will cause the principal balance in this Account at any time to exceed the Maximum Credit which we have now approved or may approve at any time in the future.

(f) To immediately pay any portion of the principal balance in excess of the Maximum Credit.

(g) To give us such personal financial statements as we may request from time to time.

(h) Not to give us false information or signatures at any time or let anyone who is not a Borrower use the Account.

(i) To perform all obligations under any mortgage or security agreement which has priority over the Mortgage and to pay all taxes, charges or assessments which might have priority over the Mortgage.

(j) That you own the Mortgaged Premises and that they are unencumbered except for encumbrances of record as of the date of this Agreement.

(k) That you will notify us immediately in writing if you change your residence or mailing address.

(l) If the Mortgaged Premises are part of a condominium or a planned unit development, to comply with all by-laws, regulations or restrictions of record.

(m) To keep the Mortgaged Premises insured as provided in this Agreement.

(n) Not to transfer title to the Mortgaged Premises (except as provided by federal law).

(o) To keep the Mortgaged Premises in good order and repair.

(p) To permit our agents to inspect the Mortgaged Premises from time to time after reasonable notice.

(q) To make all payments by check, money order, or other legal instrument in U.S. Dollars, so that we receive it at the remittance address disclosed on the monthly statement. Any subsidiary or affiliate of ours may act as your agent in receiving payments on this account.

(r) To give us a Mortgage on the Mortgaged Premises, which Mortgage is in the proper form so that it can be recorded in the office of the Recorder of Deeds or other appropriate office in the County where the Mortgaged Premises is located. You agree to fully cooperate with us to correct any clerical errors and, if we reasonably ask you, to sign a corrective mortgage or a new mortgage if the original is lost, destroyed, damaged, contains errors, or for any reason it cannot be recorded.

(s) To notify us if your Card or special checks are lost or stolen, in accordance with the paragraph called "Lost and Stolen Choice Access Cards and Checks" or if you think someone has used your Card or Account without your permission. You agree to assist us in any way we may reasonably request to find out what has happened and with any investigation and prosecution concerning unauthorized charges to this Account, including answering questions verbally and in writing.

(t) To return to us the Choice Access Card, the checks and any other devices we provided to you to obtain advances of credit, if your right to obtain further advances of credit has been Terminated, Suspended or are prohibited.

Principal and Interest CHELOC Agreement

Choice Home Equity Line of Credit - Principal and Interest    **⦿ PNC BANK**

Borrower: SHERRYCE VALENTINE
Lender: PNC Bank, National Association ("PNC Bank, N.A.")
Date of this Agreement: March 14, 2023

## AGREEMENT AND DISCLOSURE STATEMENT

*ALL OF THE ABOVE PROMISES ARE MATERIAL OBLIGATIONS UNDER THIS AGREEMENT.*

**18. Lost and Stolen Choice Access Cards and Checks.**

(a) **Notify us immediately.** If your special checks for this Account are lost or stolen, or if you think someone is using your Account without your permission, notify us immediately, in writing to:

PNC Bank

P.O. Box 8727
Dayton, OH 45401-8727

If your Card is lost or stolen, or if you think someone is using your Card without your permission, notify us immediately by calling us at 1-888-762-2265 or in writing to:

PNC Bank

P.O. Box 8727
Dayton, OH 45401-8727

(b) **Liability for unauthorized use.** You may be liable for unauthorized use of any Card provided to any Borrower, according to applicable law, but not for more than $50.00. You will not be liable for any unauthorized use of a Card or this Account made after we have been notified of the loss or theft. You should follow the directions in the Notice of Your Billing Rights if you suspect an unauthorized use of a Card or your Account.

**19. Our Liability.** We have no responsibility for failure of any machine, merchant or other party to honor checks, a Choice Access Card or any other means which we may permit from time to time to be used to obtain a loan from this Account.

**20. Possible Actions Which May Be Taken By Lender.** Under the circumstances described below, Lender can: (1) Terminate the Account; (2) require you to pay the entire outstanding balance on the Account in one payment; (3) refuse to make additional extensions of credit; (4) reduce the Maximum Credit Limit; (5) refuse to allow you to establish any new Fixed Rate Parts; and/or (6) make specific changes that are set forth in this Agreement.

(a) **Termination of Account Upon Default.** You will be in default and this Account will Terminate, effective immediately, upon our mailing a Notice of Termination to you if:

(i) You commit fraud or make a material misrepresentation in connection with this Account.

(ii) You fail to meet any of the repayment terms of this Agreement.

(iii) Any of your actions or your failure to act adversely affects our security for this Account, or any of our rights in such security; for example, and not by way of limitation, if you transfer title to the Mortgaged Premises, or the sole owner of the Mortgaged Premises who is obligated on this Account dies.

(b) **Acceleration of the Outstanding Balance.**

(i) Unless prohibited by law, if this Account is Terminated by default, we may, at our option, after any notice required by law and the expiration of any time required by law during which you may cure a default, declare due and payable the entire outstanding balance on this Account. If this happens, you will be required to pay the outstanding balance on this Account in one payment at that time. If you are in default under the previous paragraph titled "Termination of Account Upon Default," during the Repayment Period or during a time when this Account is already Terminated, we may after any notice required by law and the expiration of any time required by law during which you may cure a default, declare due and payable the entire balance owing on this Account. If we declare the entire balance due and payable, we can bring suit for the amounts due, foreclose the Mortgage, or take other action as permitted or provided by law to collect the balance owing.

(ii) If you are or become in the future an executive officer with respect to whom federal law requires that all credit granted by us be due and payable on demand, then, during such times as federal law so requires, all credit granted under this Account shall be due and payable on demand.

(c) **Suspension of Credit Privileges or Reduction of Maximum Credit.** If any of the conditions listed in this paragraph occurs, we may, by mailing a notice of our action, temporarily suspend your ability to obtain loans from this Account or establish new Fixed Rate Parts and/or reduce the Maximum Credit applicable to this Account. If, under the conditions described in the notice, the circumstances upon which the prohibition of additional extensions of credit or the reduction of the Maximum Credit were based shall cease to exist, we shall again be obligated to permit extensions of credit on this Account and to restore the Maximum Credit. The obligation shall commence after we receive and investigate a written request from you accompanied by evidence satisfactory to us that the condition which gave rise to the prohibition no longer exits. Unless prohibited by law, you shall pay the expense of obtaining any documentation we require in connection with your request.

(i) The value of the Mortgaged Premises has declined significantly below its appraised value for the purposes of this Account.

(ii) We reasonably believe that you will be unable to fulfill the repayment obligations under this Agreement because of a material change in your financial circumstances.

(iii) You file or are placed in bankruptcy.

(iv) You are in default of any Material Obligation set forth in the paragraph called "You Agree."

(v) You do one of the things listed in subparagraph (a) of this paragraph, which could cause this Account to Terminate. We may later Terminate this Account at any time during which the reason for Termination continues to exist.

(d) **Prohibition of Additional Extensions of Credit and Reduction of the Maximum Credit, Additional Circumstances.** We may also temporarily Suspend your ability to obtain loans from this Account or establish new Fixed Rate Parts and/or reduce your Maximum Credit if any of the conditions listed in this paragraph shall occur. We will give you notice of our action. If the circumstances later change so that the condition no longer exists, we shall again be obligated to allow extensions of credit, transfers to Fixed Rate Parts and to restore your Maximum Credit. We will give you notice that the credit is again available.

(i) The priority of our security interest is adversely affected by government action to the extent that the value of our security

Principal and Interest CHELOC Agreement

**Choice Home Equity Line of Credit - Principal and Interest**

⬤ **PNC BANK**

Borrower: SHERRYCE VALENTINE
Lender: PNC Bank, National Association ("PNC Bank, N.A.")
Date of this Agreement: March 14, 2023

## AGREEMENT AND DISCLOSURE STATEMENT

interest is less than 120% of your Maximum Credit.

(ii) We are notified by our regulatory agency that continued advances constitute an unsafe or unsound practice.

(iii) We are precluded by government action from imposing the Annual Percentage Rate provided in this Agreement.

(iv) The Latest U.S. Prime Rate published in *The Wall Street Journal* on the last day of any calendar month plus the Variable Rate Part Base Margin is more than 24%.

(v) We may temporarily Suspend your ability to establish new Fixed Rate Parts if, for any Fixed Rate Part the Fixed Rate Index plus the Fixed Rate Part Base Margin for the amount and term chosen is more than 24%.

**21. Prohibition of Additional Extensions of Credit at Your Request.** Any of you may direct us to prohibit further extensions of credit on this Account. A notice by any one of you that you do not intend to be obligated for additional loans on this Account shall be considered a request to prohibit further extensions of credit on this Account by all of you. The prohibition shall become effective as soon as we can reasonably act to stop new loans from being made. A prohibition of further extensions of credit, under this paragraph, will also prohibit transfers to a Fixed Rate Part. All of you who are obligated on this Account must request in writing reinstatement of this Account for the request to be effective.

**22. Limitation of Indebtedness at Your Request.**

If you deliver to us a written notice requesting that the indebtedness on this Account be limited, our obligation to make further loans from this Account or transfers to a Fixed Rate Part shall be terminated or amended, as provided by applicable law in the state where the Mortgaged Premises is located. You agree to send the notice to us at:

PNC BANK
6750 MILLER RD
BRECKSVILLE, OH 44141

**23. Costs of Collection.** If we require you to pay immediately in full as described above, we will have the right to be paid back by you for all of our costs and expenses in enforcing this Agreement to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**24. Changes to Your Account.** We may make the following changes to this Account:

(a) We may change the Index and margin applicable to the Variable Rate Part and/or applicable to new Fixed Rate Parts, if the Index is no longer available. If we do so, we will choose an index with a historical movement substantially similar to the movement of the original Index and we will choose a new margin so that the new index and new margin will result in an Annual Percentage Rate substantially similar to the rate in effect at the time the original Index became unavailable.

(b) We may make any change to which the Borrower specifically agrees in writing.

(c) We may make a change that will unequivocally benefit you during the remaining term of this Account.

(d) We may make a change which is insignificant under applicable federal law.

(e) We may make certain changes set forth in this Agreement, upon the happening of certain specified events. For example, if you are eligible for the Automatic Payment Plan Discount when you open your Account, and then cease to be eligible for the benefit, the Annual Percentage Rates on your Account may increase.

(f) If required by applicable law, we will mail you a written notice prior to the effective date of any change, in accordance with that law, of any changes made to this Account. Changes will apply to outstanding balances and new loans except as otherwise stated in the notice.

**25. Monthly Statements.** We will send you a monthly statement for each Billing Cycle in which:

(a) activity is posted to your Account; or

(b) we impose a Finance Charge to your Account; or

(c) there is a debit or credit balance of more than $1.00 in your Account.

The statement will show advances made, the amount due, Finance Charge, payments made and the balance which you owe. Unless you notify us in writing of errors in the statement within 60 days from the date it is mailed, the statement shall be considered correct and accepted by you. We need not mail you a statement if we deem this Account uncollectible or if delinquency collection proceedings have been started by us. If there is more than one Borrower, each agrees that if the statement is sent to and accepted by any of you it shall be considered correct as to and accepted by all of you. If there is more than one Borrower, we will mail the statement to the first Borrower identified on page one.

**26. Checks on Your Account.** We shall retain all checks drawn on your Account and paid.

**27. Postdated and Stale Dated Checks.** Procedures and laws applicable to postdated, and stale dated checks in connection with transactions on regular checking Accounts shall apply to checks under this Agreement. You agree not to issue postdated checks.

**28. Stop Payment.** Procedures and laws applicable to stop payment of checks in connection with transactions on regular checking accounts shall apply to checks under this Agreement. Stop Payment orders are subject to the fee disclosed in the "Other Charges" section of this Agreement. You may place a stop payment order at any branch office, or by calling us or writing us at the following address:

PNC (B6-YM07-01-1)
P.O. Box 1820
Dayton, OH 45401-1820

We cannot stop payment on a Choice Access Card transaction. If you have a dispute with a merchant concerning a Card transaction, see the paragraph called "Special Rule for Choice Access Card Purchases" which is part of the Notice of Your Billing Rights.

**29. Communications Concerning Disputed Debts.**

**ALL COMMUNICATIONS BY YOU TO US CONCERNING DISPUTED DEBTS, INCLUDING AN INSTRUMENT TENDERED AS FULL SATISFACTION OF THE ACCOUNT, SHOULD BE SENT TO:**

Choice Home Equity Line of Credit - Principal and Interest

## ⬤PNCBANK

Borrower: SHERRYCE VALENTINE
Lender: PNC Bank, National Association ("PNC Bank, N.A.")
Date of this Agreement: March 14, 2023

**AGREEMENT AND DISCLOSURE STATEMENT**

PNC BANK
P.O. BOX 1820
DAYTON, OH 45404-1820

**30. Notices.** We will send notices to you to your last known address in our files. Notices sent to that address will be effective for all purposes under this Agreement. We will send them by regular mail unless applicable law requires us to use certified or registered mail. Unless applicable law requires otherwise, a notice sent to any of you shall be considered sent to all of you, and a notice received by any one of you shall be considered received by all of you.

**31. Tax Deductibility.** You should consult a tax advisor regarding the deductibility of interest and charges for this Account.

**32. Credit Reports. YOU AUTHORIZE US TO OBTAIN CREDIT REPORTS ON YOU FROM TIME TO TIME AT OUR DISCRETION WHILE YOU HAVE AN ACCOUNT WITH US.**

**NOTICE TO ALL BORROWERS. We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report. If you believe that we have information about you that is inaccurate or that we have reported or may report to a consumer (credit) reporting agency information about you that is inaccurate, you should notify us of the specific information that you believe is inaccurate by writing to us at:**
PNC Credit Dispute Investigations
P.O. Box 8703
Dayton, OH 45401-8703

**33. Important Information about Phone Calls, Texts, Prerecorded and Email Messages.** If, at any time, you provide to PNC Bank, National Association, its affiliates or designees contact numbers that are wireless telephone number(s) including, but not limited to, cell or VoIP numbers, you are consenting to PNC Bank, National Association using an automated dialing system to call or text you, or to send prerecorded messages to you, in order to service, and collect on, any personal account(s) and business account(s) (for which you are an authorized signer or designated contact person) with PNC Bank, National Association, but not to market to you. For any type of phone call with PNC Bank, National Association, you consent that the call may be monitored or recorded for quality control and training purposes. By providing your email address, you consent to receive electronic mail from PNC Bank, National Association.

**34. Electronic Records, Electronic Signatures, Images and Counterparts.** Notwithstanding any other provision of this Agreement, including without limitation a provision requiring a "writing," this Agreement, any Mortgage or any other document related to the Account or the Card, and any amendment or modification to any of the foregoing, may in our sole and absolute discretion be presented, delivered and/or executed in as many counterparts as necessary or convenient, including both counterparts that are executed on paper and counterparts that are electronic records and executed electronically. All such counterparts shall constitute one and the same document. We may, in our discretion, convert or copy a manually signed paper counterpart into electronic form (such as scanned into PDF format or transmitted via facsimile), or (b) convert or copy an electronically signed counterpart into another electronic format or image, or into a tangible paper counterpart, for transmission, delivery, retention, recording and/or enforcement. Each counterpart, whether in its original form or in a converted or copied form, shall be deemed an original for all purposes.

**35. Remedies Cumulative.** If any circumstance exists which would permit us to temporarily prohibit further extensions of credit on this Account or reduce the credit limit or terminate this Account and accelerate the balance: (a) we may take such action at any time during which such circumstance continues to exist; and (b) our remedies under this Agreement shall be cumulative and not alternative.

**36. Delay in Enforcement.** We can delay in enforcing any of our rights under this Agreement without losing them. Any waiver by us of any provision of this Agreement will not be a waiver of the same or any other provision on any other occasion.

**37. Assignment.** You may not assign or otherwise transfer your rights and privileges under this Agreement, or delegate your obligations to repay amounts you owe us. Any attempt to assign or delegate will be void and of no effect. We may assign any and all of our rights under this Agreement at any time without your consent. A person(s) to whom we assign this Agreement shall be entitled to all of our rights under this Agreement. None of your rights or obligations shall be affected by such assignment.

**38. Severability.** If any provision of this Agreement is held to be invalid or unenforceable, such determination shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**39. Waiver.** Borrower(s) and any person who has obligations under this Agreement waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**40. Your Responsibilities.** If more than one of you has signed this Agreement, all of you are equally responsible, individually and together, to us for payment in full of this Account and performance of all obligations under this Agreement.

**41. Governing Law and Construction.** This Agreement has been accepted by us in Delaware and all loans shall be extended by us to you in Delaware. Regardless of the state of your residence or the place to which you submitted an application, you agree that the provisions of this Agreement relating to interest, charges and fees shall be governed by and construed in accordance with federal law and, as made applicable by federal law, Delaware law. Unless preempted by federal law, other substantive terms and provisions shall be governed by and construed in accordance with the laws of Delaware; procedural matters relating to the enforcement of the obligations stated in this Agreement and matters relating to the granting, perfection and enforcement of the security interest securing this Agreement shall be governed by the laws of the state where enforcement, granting or perfection takes place.

**Choice Home Equity Line of Credit - Principal and Interest**

**⊘ PNC BANK**

Borrower: SHERRYCE VALENTINE

Lender: PNC Bank, National Association ("PNC Bank, N.A.")

Date of this Agreement: March 14, 2023

## AGREEMENT AND DISCLOSURE STATEMENT

**Agreement Index.** This Index is for convenience and reference. It shall not limit the meaning or scope of any paragraph or section. "BR" refers to the Billing Rights notice on page 12 . "H" refers to the Header at the top of page one. The numbers alone refer to paragraphs of this Agreement.

| | | | | | |
|---|---|---|---|---|---|
| Acceleration of the Outstanding Balance | 20 | Finance Charges | H,7,8 | Prepayment | 13 |
| Agreement | 1 | Fixed Rate Parts | 1,5 | Pricing Tables | 11 |
| Annual Fee | H,9 | Flood Insurance | 15 | Property Insurance | 15 |
| Annual Percentage Rate | H,7 | General Description of Account | 2 | Questions About Your Bill | BR |
| Assignment | 36 | Governing Law | 41 | Reduction of Maximum Credit Limit | 20,21,22 |
| Attorney's Fees | 23 | Index | 7 | Regular Account | H,1 |
| Automatic Payment Plan | H,1 | Late Charges | 9 | Remedies | 34 |
| Base Margin | H | Legal Fees | 23 | Repayment Period | 1,3 |
| Billing Cycle | 1 | Lender | H,1 | Required Insurance | 15 . |
| Billing Errors | BR | Lender's Liability | 19 | Return Check Fee | 9 |
| Billing Statement | 25 | Loans | 4 | Return Credit Line Check Fee | 9 |
| Borrower's Responsibilities | 17,39 | Lost Card or Check | 18 | Satisfy the Mortgage | 1,10 |
| Borrower's Right to Suspend Credit | 21,22 | Margin | H,7 | Security Interest | 6 |
| Card | 1,4 | Material Obligations of Borrower | 17 | Severability | 37 |
| Changes to your Account | 24 | Maximum Credit Limit | H,1 | Stale Dated Checks | 27 |
| Checks | 4,26,27 | Minimum Payment | 11,14 | Stolen Card or Checks | 18 |
| Choice Access Card | 1,4 | Monthly Payment | 11,14 | Stop Payment | 28 |
| Close this Account | 1,9 | Mortgage | 1,6 | Stop Payment Fee | 9 |
| Closing Costs | H,9 | Mortgaged Property | 1,6 | Suspension of Credit Privileges | 1,20,21,22 |
| Collateral | 6 | Monthly Statements | 25 | Tax Deductibility | 31 |
| Costs of Collection | 23 | Notices | 30 | Telephone Calls | 33 |
| Court Costs | 23 | Other Charges | 9 | Term of a Fixed Rate Part | 3,5 |
| Credit Available | H,1,4,12 | Other Finance Charges | 8 | Termination of Account | 1,14,20 |
| Credit Reports | 32 | Our Agreement to Make Loans | 4 | Transfer Fee | H,5,8 |
| Crediting of Payments | 12 | Overlimit Fee | 9 | Transfer to Fixed Rate Part | 4,5 |
| Daily Balance | 7 | Paid in Full Checks | 29 | Unauthorized Use | 18 |
| Daily Periodic Rate | H,7 | Parts of the Account | 1 | Variable Rate | 7 |
| Default | 20 | Payment Application | 12,13 | Variable Rate Part | 1 |
| Definitions | 1 | Payment Due Date | H,1,10 | Waiver | 35,38 |
| Delay in Enforcement | 35 | Payment Options | H,11 | We May Purchase Insurance If You Don't | 16 |
| Disputed Debts | BR,29 | Payments | 10,11,12 | Writing Checks | 2,4 |
| | | Periodic Credit Review | 32 | | |
| | | Postdated Checks | 27 | | |

The Base Margins shown below do not include the Automatic Payment Plan Discount; the APRs and DPRs shown below do reflect the Automatic Payment Plan Discount: 0.250 percentage points off Base Margin.

**TABLE 1 - FIXED RATE P&I PART - Initial Daily Periodic Rates, Initial Corresponding Annual Percentage Rates, and applicable Base Margins**

| Fixed Rate Part Term | Principal & Interest Fixed Rate Part | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 60-72 months | | | 73-144 months | | | 145-216 months | | | 217-264 months | | | 265-360 months | | |
| Fixed Rate Part Amount | Base Margin | APR | DPR | Base Margin | APR | DPR | Base Margin | APR | DPR | Base Margin | APR | DPR | Base Margin | APR | DPR |
| $5,000 to $24,999 | 4.420 | 10.480 | 0.0287 | 4.470 | 10.530 | 0.0288 | 4.520 | 10.580 | 0.0290 | 4.620 | 10.680 | 0.0293 | 4.670 | 10.730 | 0.0294 |
| $25,000 to $49,999 | 2.920 | 8.980 | 0.0246 | 2.970 | 9.030 | 0.0247 | 3.020 | 9.080 | 0.0249 | 3.120 | 9.180 | 0.0252 | 3.170 | 9.230 | 0.0253 |
| $50,000 | 2.170 | 8.230 | 0.0225 | 2.220 | 8.280 | 0.0227 | 2.270 | 8.330 | 0.0228 | 2.370 | 8.430 | 0.0231 | 2.420 | 8.480 | 0.0232 |

EACH OF YOU ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT AND BY SIGNING THIS AGREEMENT INDICATES YOUR INTENTION TO BE LEGALLY BOUND BY THIS AGREEMENT, INCLUDING THE PARAGRAPHS ON ALL PAGES OF THIS AGREEMENT.

*Sherryce Valentine*    3/14/2023

- BORROWER - SHERRYCE VALENTINE - DATE -

# EXHIBIT B

Choice Home Equity Line of Credit - Principal and Interest                    **PNC BANK**

**Borrower:** SHERRYCE VALENTINE
**Lender:** PNC Bank, National Association ("PNC Bank, N.A.")
**Date of this Agreement:** March 14, 2023

## AGREEMENT AND DISCLOSURE STATEMENT

### Your Billing Rights - Keep This Notice for Future Use

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.
*Notify Us In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a check transaction on your bill, write us on a separate sheet of paper at:
PNC BANK
P.O. Box 8807
Dayton, OH 45401-8807

If your question is about a Choice Access Card transaction, write us on a separate sheet of paper at:
PNC BANK
▮▮▮▮▮
P.O. Box 1820
Dayton, OH 45401-1820

Write us as soon as possible. We must hear from you no later than 60 days after we send you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information describe the item you are unsure about.

If you have authorized us to pay your Account automatically from your checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us within three business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then.
Within 90 days, we must either correct the error or explain why we believe the bill was correct.
After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your maximum credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.
If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.
If you fail to pay the amount we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report to that you have a question about your bill. And, we must tell you the name of anyone we report to. We must tell anyone we report to that the matter has been settled between us when it finally is.
If we don't follow these rules, we can't collect the first $50.00 of the questioned amount, even if your bill was correct.

If you have a problem with the quality of goods or services that you purchased with a Choice Access Card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services.
There are two limitations on this right:
(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
(b) The purchase price must have been more than $50.
These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Records of Philadelphia PA    Doc Id: 54166974
04/10/2023 09:15 AM    Page 1 of 10    Rec Fee: $244.75
Receipt#: 23-27763
Records Department    Doc Code: M

Prepared By:
**Cierra M. Garcia-Burrows**
PNC Bank, N.A.
P. O. Box 8800
Dayton, OH 45401-8800

After Recording Return To:
PNC Bank, N.A.
ATTN: Post Closing/Final
Documentation
P. O. Box 8800
Dayton, OH 45401-8800
(800) 822-5626

Premises: 7834 FORREST AVE, PHILADELPHIA, PA 19150

Parcel Number: ████████

---

[Space Above This Line For Recording Data]

## OPEN-END MORTGAGE
### (Line of Credit)

VALENTINE
Loan █████
PIN: ████████

**NOTICE TO BORROWER: This document contains provisions for a variable interest rate.**

THIS OPEN-END MORTGAGE, dated **March 14, 2023**, is between **SHERRYCE VALENTINE, Unmarried Woman**, residing at **7834 FORREST AVE, PHILADELPHIA, PA 19150**, the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we" or "us" and **PNC Bank, National Association ("PNC Bank, N.A.")**, with an address at **222 Delaware Avenue, Wilmington, DE 19801** and hereinafter referred to as "you" or the "Mortgagee."

MORTGAGED PREMISES: In consideration of the loan hereinafter described and intending to be legally bound, we hereby mortgage, grant and convey to you the premises located at: **7834 FORREST AVE, PHILADELPHIA** (Street/City), **Philadelphia** (County), Pennsylvania **19150** (Zip) (the "Premises") and further described as:
**See Attached Exhibit A**
The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments, and appurtenances thereunto belonging or anywise made appurtenant

HELOC - PA Mortgage
████████

Page 1 of 7

hereafter, and the reversions and remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters.

THIS MORTGAGE SECURES FUTURE ADVANCES UP TO A MAXIMUM INDEBTEDNESS OF **$50,000.00**, EXCLUSIVE OF INTEREST AND EXCLUSIVE OF ADVANCES THAT MAY BE MADE BY YOU UNDER THE PROVISIONS OF THE SECTION OF THIS MORTGAGE ENTITLED "OUR AUTHORITY TO YOU."

LOAN: The Mortgage will secure the loan we received in the principal amount of **$50,000.00** or so much thereof as may be advanced and readvanced from time to time to **SHERRYCE VALENTINE**, the Borrower(s) under the Choice Home Equity Line of Credit Agreement and Disclosure Statement (the "Agreement") dated **March 14, 2023**, plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Agreement, which has a maturity date of **March 28, 2063**. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Agreement, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Agreement, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Agreement may be made, repaid and remade from time to time in accordance with the terms of the Agreement and subject to the Credit Limit set forth in the Agreement.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

MORTGAGOR'S IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Agreement because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also

HELOC - PA **Mortgage**

provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Agreement.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any mortgages that have priority to this Mortgage.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Agreement, on which you will charge interest at the interest rate set forth in the Agreement. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Agreement. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Agreement plus the amount of any mortgages that have priority to this Mortgage.

(g) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(h) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(i) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

**HELOC - PA Mortgage**

Page 3 of 7

**NO LOSS OF RIGHTS:** The Agreement and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Agreement and this Mortgage without losing your rights in the Premises.

**REMOVAL OF IMPROVEMENTS:** We shall not demolish or remove any improvements from the Premises without your prior written consent. As a condition to the removal of any improvements, you may require us to make arrangements satisfactory to you to replace such improvements with improvements of at least equal value.

**COMPLIANCE WITH GOVERNMENTAL REQUIREMENTS:** We shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Premises. We may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as we have notified you in writing prior to doing so and so long as, in your sole opinion, your interests in the Premises are not jeopardized. You may require us to post adequate security or a surety bond, reasonably satisfactory to you, to protect your interest.

**DUTY TO PROTECT:** We agree to neither abandon nor leave unattended the Premises. We shall do all other acts set forth above in this section, which from the character and use of the Premises are reasonably necessary to protect and preserve the Premises.

**COMPLIANCE WITH LAWS:** We warrant that the Premises and our use of the Premises complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**SURVIVAL OF PROMISES:** All promises, agreements and statements we have made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as the Agreement is paid in full.

**DEFAULT:** Except as may be prohibited by applicable law, and subject to any notice required by applicable law, if we default on any term in the Agreement and/or any term of this Mortgage, you may, in accordance with applicable law, pursue and enforce any rights you have under applicable law, including, without limitation, the right to: (i) accelerate all amounts due under the Agreement; (ii) foreclose upon this Mortgage and sell the Premises, either in whole or in part or in separate parcels at different times, if necessary, until the indebtedness due under the Agreement is satisfied or the Premises is exhausted, whichever occurs first; (iii) enter on and take possession of the Premises; (iv) collect the rental payments, including over-due rental payments, directly from tenants, and you are appointed as our agent and attorney-in-fact to collect any such rents by any appropriate proceeding; (v) manage the Premises, including signing, canceling and changing leases; and (vi) seek appointment of a receiver for the Premises and we hereby appoint you as our attorney-in-fact with authority to consent for us to the appointment of a receiver. This means that, among other rights you may pursue and enforce, you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe under the Agreement and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. We agree that the interest rate set forth in the Agreement will continue before and after a default, entry of a judgment and foreclosure. Subject to applicable law, if you acquire the Premises at a forced sale following our default, our right to any insurance proceeds resulting from damage to the Premises prior to the acquisition shall pass to you to the extent of the sums secured by this Mortgage

**HELOC - PA Mortgage**

immediately prior to acquisition. In addition, subject to applicable law, you shall be entitled to collect all reasonable fees and costs actually incurred by you or your agents arising out of or related to this Mortgage or the Agreement, including, but not limited to, reasonable attorneys' fees and costs of foreclosure, property preservation, documentary evidence, abstracts and title reports. We will fulfill our obligations under this Mortgage and pay you back for any reasonable expenses paid by you both before and after any Survival Event as described below.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

SURVIVAL EVENTS: For purposes of this Mortgage, "Survival Event" is defined as follows:
> (a) Any default described in the Agreement;
> (b) You requiring me/us to pay immediately the full amount of Principal which has not been paid and all the interest that I/we owe on that amount under the Agreement;
> (c) You requiring immediate payment in full of all sums secured by this Mortgage;
> (d) The Maturity Date as defined in the Agreement;
> (e) The entry of any judgment against me/us under the Agreement; and
> (f) The entry of any judgment under this Mortgage.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Agreement has been paid in full and your obligation to make further advances under the Agreement has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Agreement and this Mortgage, and provided any obligation to make further advances under the Agreement has terminated, this Mortgage and your rights in the Premises shall end.

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you, including without limitation any notice under 42 Pa.C.S.A. Section 8143, shall be given by certified mail, return receipt requested, to your address at **PNC Bank, National Association, P.O. Box 8800 Dayton, OH 45401-8800** or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Agreement has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

GENERAL: You can waive or delay enforcing any of your rights under this Mortgage without losing them.

**HELOC - PA** Mortgage

Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

RIDERS: The following Riders are to be executed by Borrower [check box as applicable]:

☐ 1-4 Family Rider                    ☐ Condominium Rider          ☐ Second Home Rider
☐ Planned Unit Development Rider      ☐ Other(s) [specify]

We acknowledge receipt of a signed copy of this Mortgage.

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

_Sherryce Valentine_     3/14/2023
- MORTGAGOR -  SHERRYCE VALENTINE - DATE -

State of _Pennsylvania_
County of _Philadelphia_

This record was acknowledged before me on _March 14 2023_ _____ by
_Verna-Lisah Brown_

_Verna-Lisah Brown_
Notary Public

My Commission Expires: _September 21, 2026_

> Commonwealth of Pennsylvania - Notary Seal
> Verna-Lisah Brown, Notary Public
> Philadelphia County
> My commission expires September 21, 2026
> Commission number ████
> Member, Pennsylvania Association of Notaries

**HELOC - PA** Mortgage

Page 6 of 7

**Certificate of Residence**

I _Sabrina Davis_, do hereby certify that the correct address of the within-named Mortgagee is **222 Delaware Avenue, Wilmington, DE 19801.**

Witness my hand this _28_ day of _March 2023_.

_[signature]_

Agent on behalf of Mortgagee

**HELOC - PA** Mortgage

EXHIBIT "A"
LEGAL DESCRIPTION

VALENTINE
Loan ██████████

SITUATED IN THE COUNTY OF PHILADELPHIA, STATE OF PENNSYLVANIA:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE IN THE 50TH WARD OF THE CITY OF PHILADELPHIA AND DESCRIBED ACCORDING TO A SURVEY AND PLAN THEREOF MADE BY JOSEPH F. DELANEY, ESQUIRE, SURVEYOR AND REGULATOR OF THE FIFTH DISTRICT ON THE EIGHTH DAY OF SEPTEMBER, A.D. 1949 AS FOLLOWS, TO WIT:

SITUATE ON THE SOUTHWESTERLY SIDE OF FORREST AVENUE (FIFTY FEET WIDE) AT THE DISTANCE OF TWO HUNDRED AND NINETY FEET ELEVEN INCHES NORTHWESTWARDLY SIDE OF SHARPNACK STREET (FIFTY FEET WIDE).

CONTAINING IN FRONT OR BREADTH ON THE SAID FORREST AVENUE SIXTEEN FEET, THREE INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH SOUTHWESTWARDLY BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID FORREST AVENUE (THE SOUTHEASTERLY AND NORTHWESTERLY LINES THEREOF PARTLY PASSING THROUGH THE CENTER OF THE PARTY WALLS OF THE BUILDING ERECTED ON THIS LOT AND THE BUILDING ERECTED ON THE LOTS OF GROUND ADJOINING TO THE SOUTHEAST AND NORTHWEST RESPECTIVELY) ONE HUNDRED AND TWENTY FIVE FEET TO THE CENTER LINE OF A CERTAIN FIFTEEN FEET WIDE DRIVEWAY WHICH EXTENDS SOUTHEASTWARDLY INTO THE SAID SHARPNACK STREET AND NORTHWESTWARDLY INTO PHIL-ELENA STREET (SEVENTY FEET WIDE).

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE SAID FIFTEEN FEET WIDE DRIVEWAY AS AND FOR A DRIVEWAY, PASSAGEWAY AND WATERCOURSE AT ALL TIMES HEREAFTER, FOREVER, IN COMMON WITH THE OWNERS, TENANTS AND OCCUPIERS OF THE OTHER LOTS OF GROUND BOUNDING THEREON AND ENTITLED TO THE USE THEREOF. SUBJECT, HOWEVER, TO THE PROPORTIONATE PART OF THE EXPENSE OF KEEPING THE SAID DRIVEWAY IN GOOD ORDER AND REPAIR.

BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN INSTRUMENT NO.



Page 1 of 2

52125833 OF THE PHILADELPHIA COUNTY, PENNSYLVANIA RECORDS.
SUBJECT TO ALL EASEMENTS, COVENANTS, CONDITIONS, RESERVATIONS, LEASES AND
RESTRICTIONS OF RECORD, ALL LEGAL HIGHWAYS, ALL RIGHTS OF WAY, ALL
ZONING, BUILDING AND OTHER LAWS, ORDINANCES AND REGULATIONS, ALL RIGHTS
OF TENANTS IN POSSESSION, AND ALL REAL ESTATE TAXES AND ASSESSMENTS NOT
YET DUE AND PAYABLE

Parcel ID# █████████